UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| THOMAS C. BAKKER, | |
|---|---|
| Plaintiff, | CASE NO. **C08-5336BHS** |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | Noted for January 23, 2009 |
| Defendant. | |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's final decision.

## INTRODUCTION

Plaintiff, Thomas Bakker, was born in 1950. At the administrative hearing, Plaintiff testified that he completed high school and one quarter of college. (Tr. 228). He testified that his main job for the past fifteen years was driving a delivery truck for Nabisco. (Tr. 228). Mr. Bakker testified that he injured his back on the job in 1998 when he slipped and fell on a loading dock. (Tr. 231-22). Mr. Bakker testified that the last two years he worked for Nabisco, he used a cart truck with a lift gate. (Tr. 233). Even when he was using the cart truck, there was still some lifting involved, and the carts were heavy. Sometimes he would have to wheel them all the way around to the back of a store. (Tr. 233-34). He also had to lift dock plates. (Tr. 234). Mr. Bakker testified that his lower back and elbows continued to hurt him throughout the time he was working, and he still has trouble with them. (Tr. 235).

Mr. Bakker testified that he decided to retire on or about April 30, 2002, once he was eligible for his pension. (Tr. 235). His boss asked him to stay on working for six more months, and he tried to, but after thirty more days, he couldn't take it any more, so he retired. (Tr. 235). He retired because of his back pain. (Tr. 236).

Plaintiff filed an application for Social Security disability benefits on November 24, 2004, alleging that he has been disabled under the Social Security Act since April 30, 2002. (Tr. 13, 21, 50-55). His application was denied initially and on reconsideration. (Tr. 23-26, 28-29). Mr. Bakker filed a hearing request, and a hearing was held before an Administrative Law Judge ("the ALJ") on December 4, 2007. (Tr. 223-48). On December 12, 2007, the ALJ issued a decision in which he found that Mr. Bakker was not disabled. (Tr. 10-20). Mr. Bakker requested review by the Appeals Council which, on March 27, 2008, denied his request for review, leaving the decision of the ALJ as the final administrative decision.

Plaintiff now seeks additional judicial review of the administrative decision denying him social security benefits. Plaintiff specifically argues: (1) the ALJ failed to properly evaluate the medical evidence; (2) the ALJ failed to properly evaluate Plaintiff's testimony, (3) the ALJ improperly determined Plaintiff's Residual Functional Capacity ("RFC"), (4) the ALJ erroneously found that Plaintiff can perform his past relevant work and (5) the Commissioner failed to meet the burden of showing that Plaintiff can perform any work in the national economy. Defendant counter-argues that the ALJ applied the proper legal standards and that the administrative findings and conclusions are properly supported by substantial evidence in the record.

## DISCUSSION

This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th

Cir. 1984).

*A. THE ALJ PROPERLY ASSESSED THE MEDICAL EVIDENCE*

Plaintiff argues the ALJ failed to provide clear and convincing reasons to reject Dr. Kretschmar's opinion regarding his functional limitations. The ALJ is entitled to resolve conflicts in the medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). He may not, however, substitute his own opinion for that of qualified medical experts. Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982). If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996). In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

After reviewing the arguments and the record, the undersigned finds the ALJ's review of the medical evidence and his findings are properly supported by substantial evidence. The ALJ wrote at length regarding the medical evidence, particularly the opinion of Dr. Kretschmar. The ALJ did not rely on the opinion of Dr. Kretschmar, rather the ALJ relied on the opinion of Dr. Hoskins of Disability Determination Services ("DDS") and his assessment of Plaintiff's credibility. The ALJ wrote the following:

> The claimant has alleged disability because of arthritis pain in his back, knees and elbows that results in problems with bending, prolonged sitting and sleeping. He testified at the hearing he has a history of an on-the-job injury in 1998 and subsequently returned to work. He stated he is primarily limited by back pain and currently experiences back pain after bending for two to three minutes and after standing 30 to 60 minutes.
>
> After considering the evidence of record, the undersigned finds that claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but his statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.
>
> The level of disability alleged by the claimant is not fully supported by the medical

evidence of record. Although claimant's medically determinable musculoskeletal impairments likely result in some pain and limitation, the general lack of medical treatment for those conditions suggests his symptoms and limitations are not as severe as he has alleged.

The claimant has a history of a work-related lumbar strain and bilateral elbow strain that occurred on January 13, 1998. Participation in physical therapy resulted in an ability to return to his past work as a delivery driver (Exhibits 1F-3F, 5F). Nerve conduction studies performed in December 1998 revealed no evidence of median or ulnar neuropathy bilaterally (Exhibit 4F). The claimant was subsequently treated with anti-inflammatory medication on an intermittent basis for exacerbations of back and knee pain, in addition to elbow pain associated with medial epcondylitis (Exhibit 5F). However, he continued to work as a delivery driver until his retirement on April 30, 2002.

Medical records from treating physician Paul O. Kretschmar, M.D., reveal relatively few complaints of back pain during the period at issue beginning April 30, 2002. X-rays performed in February 2005 to evaluate complaints of pain revealed mild discogenic disease of the lumbar spine and mild degenerative changes in the left elbow (Exhibit 6F/39, 40).

After performing a consultative examination of the claimant in February 2005, treating physician Dr. Kretschmar reported an impression of chronic low back pain, probably related to mild L2-3 discogenic disease with no radicular component. He reported objective findings were very minimal. Back range of motion was essentially normal with a minimal loss of flexion. Examination of the left elbow was negative except for some tenderness along the medial epicondyle. Although the claimant has alleged that bilateral knee pain contributes to his disability, exam of the knees showed normal range of motion and x-rays of the knees performed in February 2005 were normal (Exhibit 6F/37-38). The examination otherwise revealed normal gait and station, intact sensation, and full use of his hands for grasping and manipulating and fine and dexterous movements (Exhibit 6F/69-72).

The claimant sought treatment with Dr. Kretschmar on July 28, 2005, complaining of severe low back pain (Exhibit 10F/91). MRI of the lumbar spine performed in August 2005 revealed degenerative disc changes but no stenoses (Exhibit 10F/93). Dr. Kretschmar reported in October 2005 that claimant's low back pain was due to degenerative changes of the lumbar spine. He reported physical examination revealed some lumbar spasm but normal range of motion and normal reflexes. An impression of osteoarthritis was reported and the claimant was prescribed Robaxin and Voltaren. Dr. Kretschmar reported claimant was not a surgical candidate on the basis of MRI findings (Exhibit 10F/94). There is no further record of medical treatment for complaints of back pain until March 2, 2007, when Dr. Kretschmar reported claimant had significant osteoarthritis of the lumbar spine but not spinal stenosis or degenerative disc disease. He noted claimant was doing well using ibuprofen and Robaxin (Exhibit 10F/112). Annual physical examination performed by Alexander Chow, M.D., on September 21, 2007, revealed generally normal physical examination findings other than a right inguinal hernia. However, the claimant declined a consult with a surgeon regarding repair of that condition. It was also noted that claimant's chronic back pain due to degenerative disc disease required continued treatment with NSAIDS (Exhibit 19F/114).

The level of activity claimant has reported is also inconsistent with his allegation of disabling pain. He has reported an ability to shop once per week, prepare simple meals, perform household chores including laundry three times per week, mowing twice per week and vacuuming once per month. He reported he attends his 10-year old son's sports events and Cub Scout meetings on a regular basis. He walks his son to the bus stop or drives him

to school and helps him with homework (Exhibit 1E). At the hearing, claimant testified that although he experiences pain he has chosen not to give up his activities. He stated he works in his shop and uses power tools and hand tools to build bird houses, tool boxes and Pinewood Derby race cars for Cub Scouts. He further testified he managed a basketball team "a couple of years ago", suggesting he performed that activity during the period in which he alleges disability. He explained that his involved demonstrating technique and he acknowledged he could teach the fundamentals of basketball. His reported activities in general are consistent with an ability to perform work at a medium exertional level.

The claimant's credibility is reduced by other factors. He testified he voluntarily retired from his job on April 30, 2002. However, he did not apply for Social Security disability benefits until November 2004, alleging he had been disabled since April 30, 2002. The delay in filing for disability benefits suggests a desire to supplement his pension with Social Security benefits rather than a conclusion that his retirement in April 2002 was based on disability as he now alleges. In any case, the evidence of record is not supportive of a finding of disability even beginning November 2004 as discussed above.

In making the above residual functional capacity assessment, the undersigned has adopted the opinion of Disability Determination Services medical consultants that claimant remains capable of performing the full range of medium work as consistent with the preponderance of the evidence (Exhibit 8F)(Social Security Ruling 96-6p).

Little weight is given to the opinion of Dr. Kretschmar reflected in a Physical Residual Functional Capacity Questionnaire dated January 29, 2007, suggesting claimant is unable to perform even sedentary work on a regular full-time basis due to low back pain (Exhibit 9F). Although Dr. Kretschmar reported he had recently seen the claimant for a disability examination, the file contains no record of recent physical examination. Medical records prior to January 2007 document treatment for conditions other than back pain, including sinus infection and dermatology issues in 2006 (Exhibit 10F/108-111). In addition, the most recent record of any complaints of back pain relative to the report of January 2007 that claimant required the ability to twist, stoop, crouch, and climb ladders, he did not report any objective findings to support those limitations. As discussed above, the report of the physical examination he performed in February 2005 revealed only minimal objective findings (Exhibit 6F/69-72).

In addition, very little weight is given to the note indicating, "I would recommend Mr. Thomas Bakker apply for Social Security Disability Osteoarthritis of Back & Knees" (Exhibit 11F). Although the document appears to be from Dr. Kretschmar, it is unsigned and undated. However, more importantly, it contains no discussion of objective medical findings or any discussion of specific functional limitations. Because of the deficiencies noted in Dr. Kretschmar's reports of opinion, greater weight has been given to the opinion of Disability Determination Services medical consultants regarding the claimant's residual functional capacity.

Based on all the above, the claimant is credible only to the extent his allegations are consistent with the residual functional capacity determined in this case.

Tr. 17-19.

Substantial evidence in the record supports the ALJ's decision. The physical capacity evaluation prepared by DDS is inconsistent with Dr. Kretschmar's statements and opinion suggesting total disability. The DDS opinion is consistent with the evaluation of Dr. Chow. Necessarily intertwined with the ALJ's analysis of the medical evidence is his consideration of the Plaintiff's allegations and statements alleging

complete disability. As further discussed below, the undersigned finds no error in the ALJ's treatment of Plaintiff's credibility and thus, the ALJ properly relied on this as an additional basis to reject Dr. Kretschmar's opinion. In sum, the undersigned finds no error in the ALJ's treatment and analysis of the medical evidence.

## B. *THE ALJ PROPERLY EVALUATED PLAINTIFF'S CREDIBILITY*

Questions of credibility are solely within the control of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. Id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (*citation omitted*). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

Without repeating the ALJ's analysis quoted above, the undersigned finds the ALJ properly discredited Plaintiff's allegations of disability beyond the severity level determined by the DDS report and Dr. Chow's evaluation. The ALJ further noted Plaintiff's conservative treatment over a significant period of time. The ALJ properly relied on this medical evidence, which is substantial, to discredit

Plaintiff's statements. In sum, the ALJ properly relied on the medical evidence to discredit the testimony, including the medical opinion evidence provided by DDS and Dr. Chow. The ALJ properly and reasonably considered Plaintiff's activity level to further support the finding that Plaintiff's limitations are not as severe as he alleged.

## C. THE ALJ PROPERLY EVALUATED PLAINTIFF'S RESIDUAL FUNCTIONAL CAPACITY, CONCLUDING PLAINTIFF RETAINED THE ABILITY TO PERFORM PAST RELEVANT WORK

"[R]esidual functional capacity" is "the maximum degree to which the individual retains the capacity for sustained performance of the physical- mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. 20 CFR § § 404.1527, 416.927.

Plaintiff argues the ALJ's RFC finding does not address or include all of Mr. Bakker's limitations. Plaintiff's argument is premised on the contention that the ALJ erred when he evaluated the medical evidence and Plaintiff's testimony. As discussed above, the ALJ properly considered the medical evidence and he discounted or rejected certain opinions relied on by Plaintiff to make this argument. Likewise, the ALJ properly considered and discounted Plaintiff's testimony that would support greater limitations than concluded by the ALJ.

The ALJ found Plaintiff is able to perform a full range of medium work, generally requiring the ability to stand and walk for approximately six hours each during a normal workday, occasional lifting of up to 50 pounds and frequent lifting of up to 25 pounds (Tr. 15-16). The physical evaluation completed by DDS and the opinion of Dr. Chow support this finding. After reviewing the record and ALJ's RFC finding, the undersigned finds no errors. The ALJ's RFC finding accurately reflects medical evidence relied upon by the ALJ.

## D. THE ALJ PROPERLY COMPLETED STEP-FOUR OF THE ADMINISTRATIVE PROCESS

The Ninth Circuit relatively recently wrote:

> At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir.1990). Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, she can perform any substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f). *Moore v. Apfel*, 216 F.3d 864, 869 (9th Cir.2000). Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. [Footnote omitted]
> This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e) The claimant must be able to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82-62.

Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001).

Here, Plaintiff described in sufficient detail the job requirements of his job working as a truck driver for Nabisco/Frito Lay. At the hearing the vocational expert heard the testimony of the plaintiff and the vocational expert was asked whether Mr. Bakker would be capable of performing this type of work. The vocational expert answered affirmatively. Tr. 19, 246-247. The court finds no error in the ALJ's assessment of plaintiff's past relevant work and his ability to perform at that level during the relevant period.

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the Administration's final decision denying plaintiff's application for social security disability benefits. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **January 23, 2009**, as noted in the caption.

DATED this 9th day of January, 2009.

                                         */s/ J. Kelley Arnold*
                                         J. Kelley Arnold
                                         U.S. Magistrate Judge