UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS C. BAKKER,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

Case No. C08-5336BHS

ORDER DECLINING TO ADOPT THE REPORT AND RECOMMENDATION AND REMANDING ACTION

    This matter comes before the Court on the Report and Recommendation of the Honorable J. Kelley Arnold, United States Magistrate Judge (Dkt. 17) and Plaintiff's Objections to the Report and Recommendation (Dkt. 20). The Court has considered the Report and Recommendation, Plaintiff's objections, and the remainder of the file, and hereby declines to adopt the Report and Recommendation and remands this action to the ALJ for further consideration.

## I. PROCEDURAL HISTORY

    On November 24, 2004, Plaintiff filed an application for Social Security Disability Benefits and alleged that he had been disabled under the Social Security Act since April 30, 2002. Tr. 13. The Social Security Administration initially denied the application on March 9, 2005, and upon reconsideration, denied it again on May 17, 2005. Tr. 13. On July 18, 2005, Plaintiff filed a hearing request. Tr. 13. In response to this request, the ALJ conducted an

ORDER – 1

administrative hearing on December 4, 2007. Tr. 13. On December 12, 2007, the ALJ issued a decision denying Plaintiff's application. Tr. 10-20.

Plaintiff sought further administrative review by filing an appeal with the Administration's Appeals Council. Tr. 9. On March 27, 2008, the Appeals Council declined review, leaving the ALJ's decision as the final administrative decision on Plaintiff's application. Tr. 5-8. On May 27, 2008, Plaintiff filed a complaint in this Court, seeking review of the ALJ's decision. Dkt. 1.

On January 9, 2009, Judge Arnold issued a Report and Recommendation affirming the ALJ's decision. Dkt. 17. Specifically, Judge Arnold found that the ALJ properly assessed the medical opinions of Plaintiff's treating physician, Dr. Kretschmar, and that "his findings are properly supported by substantial evidence." Dkt. 17 at 3.

On January 26, 2009, Plaintiff filed objections to the Report and Recommendation. Dkt. 20. Plaintiff argued that the Magistrate Judge failed to address Plaintiff's arguments that the ALJ (1) improperly rejected Dr. Kretschmar's opinion and (2) improperly considered Mr. Bakker's testimony. Dkt 20 at 4. Defendant did not file a response to Plaintiff's objections.

## II. FACTUAL BACKGROUND

The facts of this case are explained in detail in the Report and Recommendation (Dkt. 17) and are adopted by reference with exception to the following facts.

**A.    Plaintiff's Relevant Medical History**

In September 2002, Plaintiff's treating physician, Paul Kretschmar, M.D., first treated Plaintiff for chronic low back pain. Tr. 148. On February 17, 2005, Dr. Kretschmar conducted a lumbar spine x ray on Plaintiff and found L2-3 mild disc narrowing, multilevel mild degenerative spurring, accentuated lumbar lordosis, and mild discogenic disease.  Tr. 167.  On the same day, Dr. Kretschmar diagnosed Plaintiff with "chronic low back pain, probably related to mild L2 L3 discogenic disease." Dr. Kretschmar also noted very minimal objective findings. Tr. 136.

ORDER – 2

On April 15, 2005, Dr. Kretschmar examined Plaintiff and found "some spasm of the lumbar musculature." Tr. 139. Dr. Kretschmar diagnosed Plaintiff with acute lumbosacral strain superimposed on discogenic disease. Tr. 139. On May 7, 2005, Disability Determination Services (DDS) doctor, Robert G. Hoskins, M.D., reviewed all evidence in Plaintiff's file and completed a physical Residual Functional Capacity (RFC) assessment. Tr. 180. Dr. Hoskins opined that Plaintiff (1) could occasionally lift or carry a maximum of 50 pounds, (2) could frequently lift or carry a maximum of 25 pounds, (3) could stand or walk for about six hours in an eight-hour workday, (4) could sit for a total of six hours in an eight-hour workday, (5) could push or pull in an unlimited manner, and (6) had no postural, manipulative, visual, communicative or environmental limitations. Tr. 182-84.[1]

On July 28, 2005, Dr. Kretschmar reported that Plaintiff was complaining of severe low back pain with a radicular component; he referred Plaintiff for an MRI. Tr. 217. On August 5, 2005, Plaintiff's lumbar spine MRI report diagnosed the following:

> FINDINGS: Alignment, vertebral body heights, and marrow signal are noted for endplate changes at T12 L1 and 87 cm vertebral body medium at L1. A developing Schmorl's node is present at the posterior aspect of the superior end plate of L4. Disc space narrowing is present from T12 L1 to L2 3 and at L5 S1. Disc dessication is present to varying degrees at all levels.
> Variable small, posterior, non stenosing disc bulges are present at all lumbar levels.
> IMPRESSION:
>  DIFFUSE LUMBAR DEGENERATIVE DISC CHANGES WITH NO STENOSES.
>  DEVELOPING SCHMORL'S NODE AT L4.
>  L1 VERTEBRAL BODY HEMANGIOMA.

Tr. 215.

On October 26, 2005, Dr. Kretschmar examined Plaintiff, reported that the MRI showed "significant osteoarthritis of the lumbar spine," and reported that he believed Plaintiff's symptoms to be "secondary to degenerative changes of the lumbar spine," and noted that the physical examination revealed "some lumbar spasm." Tr. 214.

---

[1] The record up until the DDS RFC opinion is referred to as the "pre-2005 record." The record after the DDS RFC opinion is referred to as the "post-2005 record."

ORDER – 3

On January 29, 2007, Dr. Kretschmar completed a physical RFC Questionnaire regarding Plaintiff's limitations. Tr. 188-92. On the RFC Questionnaire, Dr. Kretschmar noted that he had recently seen the claimant prior to his completion of the RFC Questionnaire. Tr. 188. However, it is not clear to which examination Dr. Kretschmar was referring, and this "recent examination" does not appear to be included in the record. In any event, Dr. Kretschmar opined that Plaintiff would need a job which permits shifting positions at will from sitting, standing or walking and that Plaintiff would sometimes need to take unscheduled breaks during an eight-hour work shift. Tr. 191. He opined that Plaintiff (1) could never lift or carry a maximum of 50 pounds, (2) could occasionally lift or carry ten pounds, (3) could frequently lift or carry less than ten pounds, (4) could rarely crouch or climb ladders, and (5) could occasionally twist, stoop or bend. *Id*.

Dr. Kretschmar's RFC Questionnaire stated that he was unable to determine how many hours or minutes Plaintiff could sit at one time before needing to get up, how long Plaintiff could sit and stand or walk in an eight-hour workday, and whether Plaintiff needed to include periods of walking around during an eight-hour workday. Tr. 190.

On September 21, 2007, Plaintiff received his annual physical examination by treating physician, Alexander Chow, M.D. Tr. 193, Tr. 237. Dr. Chow did not report any objective findings related to Plaintiff other than a right inguinal hernia. Tr. 194. Dr. Chow noted Plaintiff's recent MRI and use of non steroidal anti inflammatory drugs (NSAIDs) and noted "[c]hronic low back pain secondary to degenerative disk disease. Continue with NSAIDs." Tr. 194. Dr. Chow did not provide an opinion with regard to Plaintiff's limitations.

**B.     Plaintiff's Limitations**

At the hearing, the ALJ took testimony from Paul Morrison, a licensed vocational expert (VE) who testified based on his review of Plaintiff's medical records. Tr. 245. The VE testified regarding Plaintiff's ability to perform his prior work and other work in the

ORDER – 4

national economy and local economy. The VE noted that Plaintiff previously worked as a delivery driver. Tr. 246.

The VE responded to two hypothetical questions. The first question was based on the following RFC: capable of lifting up to 50 pounds and frequently 25; sitting, standing or walking for six hours in an eight-hour workday; and pushing and pulling unlimited. Tr. 247. Based on this hypothetical, the VE opined that Plaintiff could perform past relevant work. *Id.* The second question was based on the following RFC: capable of occasionally lifting 10 pounds, and frequently less than 10; crouching and climbing only on a rare basis; occasionally twisting, stopping, and frequently able to do stairs; would be absent four-plus days a month. *Id.* Based on the second hypothetical, the VE opined that Plaintiff could not perform past relevant work. *Id.*

**C.     ALJ's Decision**

In his decision, the ALJ found Plaintiff not disabled after completing all five steps of the administrative review process. 20 C.F.R. § 404.1520(a). At step four of the sequential evaluation process, an ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). A claimant's RFC is his "ability to do physical and mental work activities on a sustained basis despite limitations from his impairments." Tr. 14. In making this finding, the ALJ must consider all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence and opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96 2p, 96 5p, 96 6p and 06 3p. Tr. 16. At step four, the ALJ concluded that:

> claimant has the residual functional capacity to perform the full range of medium work. Medium work generally requires the ability to stand and walk for approximately six hours each during a normal workday, occasional lifting of up to 50 pounds and frequent lifting of up to 25 pounds.

Tr. 16.

ORDER – 5

In his decision, the ALJ mentioned Plaintiff's August 2005 MRI, but did not discuss the specific findings. The ALJ reported, "MRI of the lumbar spine performed in August 2005 revealed degenerative disc changes but no stenoses (Exhibit 10F/93)." Tr. 18. In consideration of Dr. Kretschmar's RFC opinion, the ALJ gave greater weight to the DDS medical consultants' RFC opinion and rejected Dr. Kretschmar's opinion as follows:

> Little weight is given to the opinion of Dr. Kretschmar reflected in a Physical Residual Functional Capacity Questionnaire dated January 29, 2007, suggesting claimant is unable to perform even sedentary work on a regular full time basis due to low back pain (Exhibit 9F). Although Dr. Kretschmar reported he had recently seen the claimant for a disability examination, the file contains no record of recent physical examination. Medical records prior to January 2007 document treatment for conditions other than back pain . . . . In addition, the most recent record of any complaints of back pain relative to the report of January 2007 was on October 26, 2005 (Exhibit 10F/94). While Dr. Kretschmar opined in January 2007 that claimant required the ability to change position at will from sitting, standing or walking, and was limited in his ability to twist, stoop, crouch and climb ladders, he did not report any objective findings to support those limitations. As discussed above, the report of physical examination he performed in February 2005 revealed only minimal objective findings (Exhibit 6F/69 72).
> In addition, very little weight is given to the note indicating, "I would recommend Mr. Thomas Bakker apply for Social Security Disability Osteoarthritis of Back & Knees" (Exhibit 11F). Although the document appears to be from Dr. Kretschmar, it is unsigned and undated. However, more importantly, it contains no discussion of objective medical findings or any discussion of specific functional imitations. Because of the deficiencies noted in Dr. Kretschmar's reports of opinion, greater weight has been given to the opinion of Disability Determination Services medical consultants regarding the claimant's residual functional capacity.

Tr. 19.

At step five in the sequential evaluation process, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1420(g). If the claimant is able to do any other work, he is not disabled. *Id.* In this case, at step five, the ALJ found Plaintiff not disabled and found that "[b]ased on the testimony of the vocational expert . . . the claimant retains the ability to perform his past relevant work as a delivery driver as it is generally performed in the national economy." Tr. 19.

ORDER – 6

## III. DISCUSSION

In Plaintiff's Objection to the Report and Recommendation, Plaintiff argues that the Magistrate Judge's Report and Recommendation failed to address Plaintiff's arguments that (1) the ALJ failed to properly evaluate the medical evidence; (2) the ALJ failed to properly evaluate Plaintiff's testimony; (3) the ALJ improperly determined Plaintiff's Residual Functional Capacity ("RFC"); (4) the ALJ erroneously found Plaintiff can perform past relevant work; and (5) the Commissioner failed to meet the burden of showing that Plaintiff can perform any work in the national economy. Dkt. 20. These same arguments were initially raised in Plaintiff's opening brief. Dkt. 11. Defendant's responsive brief to the opening brief countered that the ALJ did not err because he cited substantial evidence and applied correct legal standards in finding Plaintiff not disabled. Dkt 14. at 11.

**A.     Standard of Review**

This Court shall make a de novo determination of those portions of the Report and Recommendation to which objection is made. 28 U.S.C. § 636. The court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. *Id.*

An ALJ's decision to deny benefits may be set aside if it is not supported by substantial evidence or is based on a legal error. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). In determining whether the ALJ's findings are supported by substantial evidence, the administrative record must be reviewed as a whole with consideration of all the evidence contained therein. *Id.* Substantial evidence is such relevant evidence as a reasonable mind must accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Fife v. Heckler,* 767 F.2d 1427, 1429 (9th Cir. 1985).

**B.     The ALJ's Evaluation of Medical Evidence**

The ALJ is entitled to resolve conflicts in the medical evidence. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987).  The ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242

ORDER – 7

F.3d 1144, 1150 (9th Cir. 2001). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." *Id.*

If a treating doctor's opinion is contradicted by another doctor, the ALJ may reject this opinion by providing "specific and legitimate reasons" that are supported by substantial evidence in the record. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *see also Lester v. Chater*, 81 F.3d 747, 830 31 (9th Cir. 1996). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 756-57.

This Court finds that the ALJ correctly resolved conflicting medical evidence and found Plaintiff capable of performing past relevant work in accordance with the pre-2005 record. However, the Court also finds that the ALJ has not resolved conflicting medical evidence regarding Plaintiff's limitations from the post-2005 record. Conflicting medical evidence remains because the record is inadequate; it is not clear whether the ALJ properly evaluated the post-2005 medical evidence.

As addressed in Section II, *supra*, there is a conflict in the record as to Plaintiff's limitations. In May 2005, Dr. Hoskins issued the DDS report and opined that Plaintiff (1) could occasionally lift or carry 50 pounds, (2) could frequently lift or carry 25 pounds, (3) could push or pull in an unlimited manner, and (4) had no postural, manipulative, visual, communicative or environmental limitations. Tr. 182-84. In August 2005, Plaintiff had an MRI. Tr. 215. In October 2005, Plaintiff was examined again by Dr. Kretchmar. Tr. 214. Almost two years later, in January 2007, Dr. Kretschmar issued his RFC opinion. Tr. 214. In contrast to the DDS opinion, Dr. Kretschmar found that Plaintiff (1) could never or rarely lift or carry a maximum of 50 pounds, (2) could occasionally lift or carry ten pounds, (3) could frequently lift or carry less than ten pounds, (4) could rarely crouch or climb ladders, and (5) could occasionally twist, stoop or bend. Tr. 191.

ORDER – 8

The ALJ resolved this conflict between the DDS opinion and Dr. Kretschmar's opinion by relying on the DDS opinion and explaining why little weight is given to Dr. Kretschmar's RFC opinion. The ALJ noted "deficiencies . . . in Dr. Kretschmar's reports of opinion" (Tr. 19) and explains that "[a]though Dr. Kretschmar reported he had recently seen the claimant for a disability examination, the file contains no record of recent physical examination." Tr. 19. Furthermore, the ALJ reported that "the report of physical examination [Dr. Kretschmar] performed in February 2005 revealed only minimal objective findings." Tr. 19.

Based on the record before this Court, it appears that the ALJ did not properly resolve this conflict for two reasons. First, it is not clear that the ALJ fully and fairly developed the record in resolving the conflict in favor of the DDS opinion with regard to Plaintiff's limitations post-2005. *See Tonapetyan*, 242 F.3d at 1150. Second, the ALJ discredited Dr. Kretschmar's RFC opinion without providing specific and legitimate reasons.

The ALJ's reliance on the DDS opinion appears to be misplaced because the DDS medical consultants based their opinion solely on the record available in May 2005, the pre-2005 record. After the DDS opinion was provided, Plaintiff sought further treatment and obtained an MRI. It is possible, but unclear, that Dr. Kretschmar relied on the findings of the MRI and the totality of Plaintiff's medical history to determine Plaintiff's limitations and complete his RFC Questionnaire.

It appears to this Court that the ALJ did not have an adequate record upon which to discredit Dr. Kretschmar's January 2007 opinion. It is unclear whether the ALJ sought to determine what, if any, recent exam Dr. Kretschmar relied upon in his RFC assessment. The ALJ made no inquiry into the "deficiencies noted in Dr. Kretschmar's reports of opinion" (Tr. 19) or into the fact that the file "contain[ed] no record of recent physical examination." Without an adequate record to allow for proper evaluation of the evidence and without specific and legitimate reasons, it is unclear whether the ALJ's RFC analysis is supported by substantial evidence.

ORDER – 9

Without substantial evidence to support the ALJ's rejection of Dr. Kretschmar's opinion, the ALJ's consideration of Plaintiff's RFC in step five of the sequential evaluation (20 C.F.R. § 404.1520(g)) is unsupported, as is the ultimate conclusion that Plaintiff is not disabled.

**C.  Conclusion**

This case is remanded because it is not clear that the ALJ fully and fairly developed the record. He did not provide specific and legitimate reasons to explain why he rejected Dr. Kretschmar's opinion as to Plaintiff's limitation and Plaintiff's total disability with regard to the post-2005 record. The ALJ's decision regarding Plaintiff's claims for the time period up to and including the date of the DDS opinion is upheld.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that

1. The Court **DECLINES TO ADOPT** the Report and Recommendation (Dkt. 17) as stated herein; and

2. This action is **REMANDED** to the Social Security Administration for further proceedings consistent with this order.

DATED this 13th day of April, 2009.

BENJAMIN H. SETTLE
United States District Judge

ORDER – 10